EUREKA COAL COMPANY ET AL. v. MELCHO.

[No. 12,752.    Filed January 12, 1927.]

1. MASTER AND SERVANT.—*Industrial Board's failure to find change in condition of injured employee held unimportant.*— The failure of the Industrial Board to find that there had been any change in condition of an injured employee after an award for temporary total disability because of an injury to one eye was unimportant where application for a second award was made on the ground that his injury "had resulted in a permanent partial impairment" and it was stipulated at the hearing that the issue was to determine "the permanent partial impairment" of claimant because of the injury to said eye, as the hearing was conducted on the theory of a new and independent application and not that there had been a change in condition.    p. 554.

2. APPEAL.—Appellate tribunal will adhere to theory on which case was tried.    p. 554.

3. MASTER AND SERVANT.—*Evidence held sufficient to show "industrial blindness."*—Evidence indicating that, as a result of an injury to his eye, an employee's sight in that eye had been reduced until he had only 2/200 of normal vision in that eye justified a finding of the Industrial Board that the injury had caused "industrial blindness" of the eye (§31, cl. f of Workmen's Compensation Act, §9476 Burns 1926).    p. 555.

Eureka Coal Co. *v.* Melcho—85 Ind. App. 552.

4. MASTER AND SERVANT.—*Construction of statute fixing compensation for injuries affecting employee's sight.*—The first part of clause "f" of §31 of the Workmen's Compensation Act (§9476, cl. f, Burns 1926) fixes the compensation for "industrial blindness" in one eye and the latter part has reference to a reduction of the sight of an eye which is not to the point of industrial blindness.  p. 555.

5. MASTER AND SERVANT.—*Compensation for loss of sight.*— An award under the Workmen's Compensation Act for the permanent loss of sight of an eye was authorized where the evidence showed the reduction of sight in that eye to 2/200 of the normal vision.  p. 555.

From Industrial Board of Indiana.

Proceeding under the Workmen's Compensation Act by Joe Melcho, opposed by the Eureka Coal Company and another. Claimant had been awarded compensation for temporary total disability but subsequently applied for an award for permanent partial impairment of the sight of an eye. From the award made, the defendants appeal. *Affirmed.* By the court in banc.

*Joseph W. Hutchinson,* for appellants.
*John A. Riddle,* for appellee.

ENLOE, J.—September 23, 1924, the appellee, while in the service of named appellant as a coal miner, received a personal injury by accident arising out of and in the course of his employment, of which the employer had knowledge and furnished medical attention, the said injury being caused by a piece of coal striking the appellant in the right eye.

In January, 1925, the appellee filed his application for an award of compensation and such proceedings were thereafter had in said cause, that, on April 8, 1925, a finding was made, and compensation awarded to appellee. The finding, now material to be considered, was, "that as a result of said injuries, the plaintiff was totally disabled from the date thereof up to and including the second day of February, 1925." Based upon the above

and other findings of fact, the appellee was awarded compensation, for temporary total disability, at the rate of $13.20 per week, beginning October 3, 1924, up to and including February 2, 1925. The compensation thus awarded was, on April 17, 1925, by the employer paid, the amount being $231.94.

Thereafter, on June 2, 1925, the appellee filed his application on form 14 of the Industrial Board, which form is denominated,—"APPLICATION FOR THE REVIEW OF AWARD ON ACCOUNT OF A CHANGE IN CONDITIONS," but stating in said application specifically the basis of his claim to an award that his said injury *"had resulted in a permanent partial impairment."* (Our italics.) Such proceedings were thereafter had, on such application, that on May 26, 1926, the full Industrial Board, by a majority of its members, made a finding that, "as a result of said accident and injury plaintiff had suffered the permanent loss of the sight of his right eye," and awarded compensation to appellee at the rate of $13.20 per week for 150 weeks commencing September 25, 1924, appellants to have credit for all compensation theretofore paid. It is from this award that this appeal is prosecuted, and in considering the matters urged for a reversal herein, it is important to observe that, upon the hearing before the full Industrial Board, it was, among other things, stipulated *"that the issue at this time is to determine the permanent partial impairment plaintiff has suffered, if any, to the right eye, as a result of that said injury."* (Our italics.) Testimony was heard with the result as above stated, and from the award made, this appeal is prosecuted.

It is first urged that the award cannot be sustained because there was no finding that there had been 1, 2. a change in the condition of appellee since the time the first award was made. It will be noted

that at the time the first award was made, there was a finding simply of total disability for work during a certain definite period covered by the board's finding, and compensation awarded covering this period; that the said period terminated in February prior to the award being made in April, and that nothing whatever was said in said finding or award about any "impairment," either temporary or permanent, and that the compensation awarded appellee on that hearing was at once paid, so that appellee was not thereafter receiving any compensation. While the application upon which the present award is based may be said, technically, to be an application for an award on account of changed conditions, yet actually, it sought an award upon an entirely new matter, viz.: permanent partial impairment, a new and distinct matter. This fact the parties recognized in their stipulation above set out, and the Industrial Board, acting upon said stipulation, heard the cause and awarded compensation as upon a new and independent application. As the cause may be said to have been "tried upon this theory," such theory will be adhered to on appeal. Upon this theory, and under said stipulation, said fact as to a "change in condition" was not necessary to sustain the award.

The appellant next complains of the amount of said award and says that, as to the said finding that appellee had permanently lost the sight of his right eye, it is not supported by any evidence, and that the award is, therefore, contrary to law. It is provided in clause "f" of §31 of our Compensation Act, (Acts 1919 p. 158, §9476 Burns 1926) "For the permanent loss of the sight of an eye or its reduction to one-tenth of normal vision, with glasses, one hundred and fifty weeks, and for any other permanent reduction of the sight of an eye, compensation shall be paid for a period proportionate to the degree of such permanent

reduction." The evidence in this case shows, and it is, in fact, conceded by appellee that, at and prior to the time of said accident and injury, he had suffered for some time from trachoma of the right eye; that as a result of said disease, the sight of said eye had been considerably impaired; that, as to the ability of the appellee to see therewith, said eye was not the average normal eye of a person of the age of appellee; that at the time of the final hearing herein, the sight of said eye (found by the Industrial Board to be the result of said accident) had been reduced until appellee had only two two-hundredths of normal vision in the eye. The sight of appellee's said eye had been much reduced below the standard fixed in said clause "f" and he was, therefore, industrially blind, and the said finding of the Industrial Board was fully warranted by the facts in evidence. The latter part of said clause "f," as we construe it, has reference to a reduction of the sight of an eye, *but not to the point of industrial blindness,* and it is in such cases only that compensation proportionate to the loss of sight should be awarded. As to the reduction of sight to the point of industrial blindness, the statute, it will be noted, does not start with any definite or fixed standard as to the sight thereof, and we have no authority to set up any standard from which to start. In this case, the appellee, at the time of the accident, had enough vision in that eye to enable him to work; he was not, as to that eye, industrially blind; now, he is so blind, and this blindness, so one of the physicians who treated him—an eye specialist—said, was the result of the injury sustained on September 25, 1924.

We therefore conclude that the objections of appellants are not well taken and that the said award should be and the same is hereby affirmed.